J-S27014-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL RUSSELL | |
| Appellant | No. 1839 EDA 2021 |

Appeal from the Judgment of Sentence Entered June 28, 2021
In the Court of Common Pleas of Northampton County
Criminal Division at No: CP-48-CR0000783-2020

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MICHAEL RUSSELL | |
| Appellant | No. 1862 EDA 2021 |

Appeal from the Judgment of Sentence Entered June 28, 2021
In the Court of Common Pleas of Northampton County
Criminal Division at No: CP-48-CR-0002849-2019

BEFORE: STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.:                    **FILED DECEMBER 01, 2022**

Appellant, Michael Russell, appeals from the June 28, 2021 judgment of

sentence imposing ten to twenty years of incarceration for strangulation,

simple assault, solicitation to commit perjury, solicitation to commit

interception of an electronic communication, multiple counts of intimidation of a witness, and obstruction of the administration of law.[1]  We affirm.

On July 16, 2019, the victim, Traci White, called 911 and reported that Appellant assaulted her.  White provided a written statement to police indicating that Appellant pushed her to the ground and choked her until she could not breathe.  Responding police officers noted redness around White's neck.  While incarcerated, Appellant continued to contact While, by phone call, text message, and letter, despite the trial court's no contact order.[2]  As a result, Appellant was charged with the aforementioned offenses.

A jury trial commenced on April 13, 2020.  Part way through trial, the parties approached the trial court with a negotiated plea agreement.  The trial court rejected it, concluding that Appellant was unable to enter a knowing, intelligent, and voluntary guilty plea.  At the conclusion of trial on April 20, 2020, the jury found Appellant guilty of all charges set forth above and not guilty of terroristic threats.  The trial court imposed sentence on June 28, 2021, and Appellant filed a timely post-sentence motion on July 6, 2021.  In his post-sentence motion, Appellant claimed that his sentence is excessive and that the jury's verdict was contrary to the weight of the evidence.  The

---

[1]  18 Pa.C.S.A. §§ 2718, 2701, 4902, 5703, 4952, and 5101.

[2]  Appellant's convictions for multiple violations of the trial court's no contact order are at issue in the companion case at No. 2079 EDA 2021.

trial court denied Appellant's post-sentence motion on August 10, 2021. This timely appeal followed.

Appellant presents three questions for our review:

I.  Whether the trial court erred in failing to properly colloquy Appellant and in rejecting Appellant's mid-trial attempt to plead guilty pursuant to a negotiated plea agreement with the Commonwealth because the record shows that the plea would have been knowing, intelligent, and voluntary, and the trial court's sole reason for rejecting the plea was the erroneous believe that a criminal defendant must be satisfied with the performance of defense counsel in order to plead guilty?

II. Whether the trial court erred in imposing a manifestly excessive, unreasonable sentence of up to 20 years' incarceration for a case in which the majority of the charges were designed to prevent the same conduct, much of Appellant's criminal record was made up of juvenile adjudications, the complainant suffered minor injuries, the complainant did not want Appellant prosecuted, the trial court justified its decision based on a mistaken belief that Appellant failed to accept responsibility, and where the sentence leaves the complainant and her young child without Appellant's financial support for the entire childhood of their daughter?

III. Whether the trial court erred in denying the post-sentence motions for a new trial because the verdict was against the weight of the evidence for the strangulation and witness intimidation charges, specifically:

a.  With respect to the strangulation charge, should the trial court have granted a new trial because the verdict was against the weight of the evidence where the evidence showed that the complainant suffered no injuries to her neck, that the EMT did not even observe any visible redness, and that she stated that the only contact with her neck was not that she was choked, but that Appellant grabbed her and threw her to the ground?

b.  With respect to the witness intimidation charge, should the trial court have granted a new trial because the

verdict was against the weight of the evidence where the evidence showed that complainant was in no way intimidated by Appellant, she had made repeated attempts to contact him after his arrest, those attempts including calling him through the prison video application, putting money on his prison account, and repeatedly making accounts under fake names so that they could continue to communicate, and where Appellant did not actually threaten or intimidate the complainant?

Appellant's Brief at ix-x.

We consider these questions in turn. To be valid, a guilty plea must be knowing, intelligent, and voluntary on the part of the defendant. *Commonwealth v Hart*, 174 A.3d 660, 667 (Pa. Super. 2017). Thus, "the guilty plea colloquy must affirmatively show that **the defendant understood what the plea connoted and its consequences**." *Id.* at 668 (**quoting Commonwealth v. Yeomans**, 24 A.3d 1044, 1047 (Pa. Super. 2011)) (emphasis added in *Hart*). To that end, the Rules of Criminal Procedure set forth seven areas of inquiry to be covered during a guilty plea colloquy:

(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or *nolo contendere*?

(2) Is there a factual basis for the plea?

(3) Does the defendant understand that he or she has the right to trial by jury?

(4) Does the defendant understand that he or she is presumed innocent until found guilty?

(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?

(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?

(7) Does the defendant understand that the Commonwealth has a right to have a jury decide the degree of guilt if the defendant pleads guilty to murder generally?

Pa.R.Crim.P. 590, comment.

A trial court may, in its discretion, reject a plea if the defendant cannot offer it knowingly, voluntarily, and intelligently. "The Pennsylvania Rules of Criminal Procedure grant the trial court broad discretion in the acceptance and rejection of plea agreements. There is no absolute right to have a guilty plea accepted." **Commonwealth v. Chazin**, 873 A.2d 732, 737 (Pa. Super. 2005) (**quoting Commonwealth v. Hudson**, 820 A.2d 720, 727–28 (Pa. Super. 2003)), **appeal denied**, 887 A.2d 1239 (Pa. 2005).

The record reflects that the parties approached the trial court with a negotiated plea agreement on April 19, 2021, midway through the trial. The record reveals that Appellant indicated his dissatisfaction with counsel on his written plea colloquy. The trial court explained to Appellant that she would not accept his plea if he was dissatisfied with defense counsel's performance:

> Mr. Russell, sir, if you're not satisfied with [defense counsel], that's entirely fine with me. If your answer is no, that's entirely fine with me. You do not have to plead guilty. I'm not forcing you to do so, sir. Whatever you want to do is fine with me.
>
> But I will be constrained to call the jury in and continue with the trial if your answer on that colloquy is no. I would do that for anyone who answered that question no, sir.

N.T. Trial, 4/19/21, at 14. Defense counsel then indicated that Appellant was changing his answer on the written colloquy. *Id.* The trial court inquired of the prosecutor as to her position on the plea, and the prosecutor responded, "We're ready to proceed. The defendant's playing games." *Id.* at 15. Thus, the Commonwealth retracted its offer, and Appellant continued to express lack of understanding with regard to the plea:

> THE COURT: Nope. I believe the Commonwealth has retracted the offer; am I right?
>
> [THE PROSECUTOR]: Judge, we've been at this all morning. It's 11:00. The defendant is playing games.
>
> [APPELLANT]: I am not. I misunderstood what he was saying. [Inaudible] he told me I had to fix it [the written colloquy]. He explained to me so I fixed it. It asked me about one thing about being in order to accept that I have to change it so I changed it. I don't think I filled it out purposely wrong. It asked me – which the court is very well aware that I've been unhappy with him. But I'm not saying that as far as the plea offer. He told me – I just answered the question. I don't think now that I feel my right's in jeopardy.
>
> THE COURT: The standard for a guilty plea is that he has to be satisfied with his representation concerning being well informed about the guilty plea.
>
> [APPELLANT]: **I'm just not getting explained everything. I don't think I'm not wrong [sic] about asking questions, Judge. I mean, I'm not understanding it. And no one's explaining it to me.**

*Id.* at 17-18 (emphasis added). The prosecutor once again indicated her concern with Appellant's repeated expression of dissatisfaction with his counsel. *Id.* at 18. The trial court rejected the plea, called in the jury, and directed Appellant not to be disruptive in the presence of the jury. *Id.* at 19.

Appellant argues the trial court erred because the law does not require a defendant to be satisfied with his counsel prior to pleading guilty. Satisfaction with counsel's performance is not among the requirements listed in the official comment to Pa.R.Crim.P. 590, Appellant notes. Further, Appellant criticizes the trial court for not conducting a full colloquy in accord with Rule 590.

We find these arguments unpersuasive. As is evident from the foregoing, the trial court was concerned with Appellant's multiple assertions that he was dissatisfied with counsel's performance. But when the trial court told Appellant he needed to be "satisfied with his representation concerning being well informed about the guilty plea," Appellant responded, in the bolded text above, that he did not understand his plea and "no one's explaining it to me." N.T. Trial, 4/19/21, at 18. With that statement on the record, in addition to Appellant's assertions of his dissatisfaction with counsel, the trial court had a valid basis for finding that Appellant was not able to enter a knowing, intelligent, and voluntary plea. Moreover, the Commonwealth had withdrawn its plea offer in apparent frustration after a morning of negotiation to no avail. The trial court, echoing the prosecutor, stated that Appellant was "playing games" rather than engaging in a sincere effort to resolve the case.

Regarding Appellant's argument that the trial court should have conducted a full colloquy in accord with Rule 590, we fail to understand why any further colloquy was necessary. The purpose of the colloquy is to ensure

that the defendant enters knowing, intelligent, and voluntary plea. In this case, further inquiry in accord with Rule 590 served no purpose after the trial court found that Appellant was unable to enter a valid plea. Based on all of the foregoing, we discern no abuse of discretion in the trial court's decision to reject Appellant's plea.

In his second assertion of error, Appellant claims his sentence was manifestly excessive.

> An appeal raising the discretionary aspects of sentencing is not guaranteed as of right; rather, it is considered a petition for permission to appeal. In order to reach the merits of a discretionary aspects claim, we must engage in a four-part analysis to determine:
>
> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Commonwealth v. Mulkin***, 228 A.3d 913, 916 (Pa. Super. 2020) (citations omitted).

As explained above, Appellant preserved his sentencing challenge in a post-sentence motion and filed a timely notice of appeal. In his concise

statement of the reason relied upon for allowance of appeal (***see*** Pa.R.A.P. 2119(f)),[3] Appellant claims his sentence was manifestly excessive. Appellant's Brief at xix-xxi. A claim of an excessive sentence can raise a substantial question[4] where the defendant proffers a reason why the sentence is excessive based on the facts of the case; a bald claim of excessiveness will not. ***Commonwealth v. Dodge***, 77 A.3d 1263, 1271 (Pa. Super. 2013), ***appeal denied***, 91 A.3d 161 (Pa. 2014). Here, Appellant claims in his Pa.R.A.P. 2119(f) statement that his aggregate 10 to 20-year sentence is excessive under the circumstances because the sentencing court erroneously concluded that Appellant did not accept responsibility for his crimes; because the victim sustained only minor injuries; because the victim stated she did not want Appellant to be prosecuted; and because Appellant suffered from untreated mental health issues at the time of the offenses. Appellant has

_____

[3] That rule provides:

> **(f) Discretionary aspects of sentence.** An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in a separate section of the brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence.

Pa.R.A.P. 2119(f).

[4] The Sentencing Code provides that allowance of appeal will be granted only where the appellant raises a substantial question that the sentence is inappropriate under the statutory sentencing framework. 42 Pa.C.S.A. § 9781(b)

offered more than a bald claim of excessiveness, and we therefore conclude he has raised a substantial question as to the propriety of his sentence.

We now consider the merits. Sentencing is vested in the sound discretion of the trial court; we will not reverse absent an abuse of that discretion. *Dodge*, 77 A.3d at 1274. Because Appellant's sentences fall within the guideline ranges, we will reverse if the sentencing court applied the guidelines erroneously or if application of the guidelines is clearly unreasonable under the circumstances of this case. 42 Pa.C.S.A. § 9781(c)(1), (2). Our review of the record includes:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

Appellant argues, as noted above, that the victim's injuries were minor, that she did not want Appellant prosecuted, and that Appellant had untreated mental health problems at the time of the offense. The trial court imposed standard range sentences for each of Appellant's convictions, and ran them consecutively. The record reflects that the trial court was aware of and considered Appellant's mental health history. The trial court also noted Appellant's extensive history, including numerous violent offenses as a juvenile. The trial court's finding that Appellant was unwilling to accept

responsibility for his actions came from Appellant's pre-sentence investigation ("PSI") report:

> We considered Appellant's [PSI], which did not note anything favorable about Appellant. The PSI Report discusses Appellant's inability to gain and maintain employment, his unwillingness to take responsibility for his actions, his constant communication with Ms. White, his extremely poor prognosis for community supervision after any period of incarceration, and a recommendation for a state sentence because Appellant's needs are best served under the direction of the Pennsylvania Board of Probation and Parole.

Trial Court Opinion, 11/3/21, at 12. Further, Appellant's prison record during his incarceration for the present record included write ups for intimidation of other inmates. *Id.* at 12-13.

In addition to the foregoing, the trial court noted that Appellant's purported acceptance of responsibility by attempting to plead guilty must be weighed against the fact that he has been convicted of multiple offenses involving his attempts to get the victim to lie for him and/or not cooperate with the prosecution. According to the trial court, Appellant's "extensive efforts to get the victim to lie for him were relentless for months." *Id.* at 14. Likewise, the victim's stated wish that Appellant not be prosecuted had to be weighed in this context. As to the victim's minor injuries, as we will explain below, injury is not an element of the offense of strangulation. We discern no abuse of discretion in the trial court's analysis of any of these considerations.

The case law Appellant relies on is likewise unavailing. In **Commonwealth v. Dodge**, 957 A.2d 1198 (Pa. Super. 2008), **appeal**

*denied*, 980 A.2d 605 (Pa. 2009), for example, the trial court imposed 58 ½ to 124 years of incarceration—effectively a life sentence for the 42-year-old defendant—for two counts of burglary and 37 counts of receiving stolen property. The trial court arrived at the aggregate total by running sentences consecutively. The defendant's offenses were non-violent and the 37 counts of receiving stolen property related to Appellant's theft of costume jewelry. *Id.* at 1202. This Court therefore vacated the sentence.

Appellant also relies on *Commonwealth v. Coulverson*, 34 A.3d 135 (Pa. Super. 2011), wherein this Court reversed a 90-year maximum sentence in connection with multiple sexual offenses because the trial court arrived at that sentence "notwithstanding the tragedy and dysfunction underlying Coulverson's own life, his individual need for effective intervention, or any rehabilitation he might achieve." *Id.* at 148. Further, the record reflected the sentencing court's "determination not to consider any sentence other than a statutory maximum, notwithstanding any factor that might counsel to the contrary." *Id.*

*Dodge* is easily distinguishable in that the defendant's offenses were non-violent and he received what amounted to a life sentence for stealing large quantities of jewelry of little value. Instantly, Appellant was convicted of strangulation—a violent offense—and multiple attempts to prevent the victim from testifying against him. His sentence also is significantly shorter than the one imposed in *Dodge*. *Coulverson* was a sexual assault case in

which the trial court evinced its determination that the maximum term of the defendant's sentence should be the statutory maximum. The trial court in *Coulverson* disregarded evidence regarding the defendant's individualized needs. The instant case is distinguishable in that the trial court imposed standard-range sentences and took account of Appellant's needs. The court considered, among other things, Appellant's criminal history, his history in prison, his ongoing and relentless efforts to convince the victim to lie for him, and his belligerent conduct during trial, in arriving at the aggregate sentence. The trial court was aware of Appellant's mental health needs, but found that other factors weighed in favor of the 10 to 20-year term of incarceration. There is no indication in the record that the trial court was determined to impose the longest possible sentence regardless of the evidence of record. *Coulverson* is distinguishable. Based on all of the foregoing, we discern no abuse of discretion in the trial court's sentence.

In his third and final assertion of error, Appellant claims the trial court erred in denying his post-sentence motion for a new trial on the strangulation and witness intimidation charges, as both convictions were against the weight of the evidence. We conduct our review as follows:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny

- 13 -

justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013).

The Crimes Code defines strangulation in relevant part as follows:

- 14 -

         **(a) Offense defined.**--A person commits the offense of strangulation if the person knowingly or intentionally impedes the breathing or circulation of the blood of another person by:

         (1) applying pressure to the throat or neck; or

         (2) blocking the nose and mouth of the person.

         (b) Physical injury.--Infliction of a physical injury to a victim shall not be an element of the offense. The lack of physical injury to a victim shall not be a defense in a prosecution under this section.

18 Pa.C.S.A. § 2718(a), (b). The record includes the victim's 911 call wherein she asked for help because Appellant choked her and tried to kill her. N.T. Trial 4/13/21, at 38; Commonwealth Exhibit 2. The record also contains the victim's written statement wherein she described in detail Appellant's grabbing her by the neck and choking her until she could not breathe. Commonwealth Exhibit 38. Subsequently, the victim changed her story. According to Appellant, the victim's changed story plus the absence of evidence of serious injury entitles him to a new trial based on weight of the evidence. We disagree. The jury was entitled to credit the victim's statements to the 911 dispatcher and to police and discredit her later statements, especially given the body of evidence indicating that Appellant was attempting to intimidate the victim into changing her story. Further, the statute provides that physical injury to the victim is not an element of the offense. The trial court did not abuse its discretion in denying Appellant's motion for a new trial on the strangulation charge based upon Appellant's claim the verdict was against the weight of the evidence.

Next, we consider Appellant's challenge to several counts of the witness intimidation charge:

>    **(a) Offense defined.--**A person commits an offense if, with the intent to or with the knowledge that his conduct will obstruct, impede, impair, prevent or interfere with the administration of criminal justice, he intimidates or attempts to intimidate any witness or victim to:
>
>    […]
>
>    (2) Give any false or misleading information or testimony relating to the commission of any crime to any law enforcement officer, prosecuting official or judge.
>
>    (3) Withhold any testimony, information, document or thing relating to the commission of a crime from any law enforcement officer, prosecuting official or judge.
>
>    […]
>
>    (5) Elude, evade or ignore any request to appear or legal process summoning him to appear to testify or supply evidence.

18 Pa.C.S.A. § 4952(a)(2), (3), (5).  Appellant was convicted under each of these subsections.  Appellant claims the weight of the evidence was against his witness intimidation convictions because there is no evidence the victim was intimidated.  His claim is unavailing.  The record contains evidence from Appellant's cell phone, prison phone records, and a written letter—all of which document extensive communications between Appellant and the victim regarding Appellant's prosecution and his wish for the victim not to cooperate. Indeed, during some of the communications between Appellant and the victim, the victim expressed her concern about being charged with perjury.  Despite all of this, the victim testified at trial that she did not remember discussing

- 16 -

the case with Appellant. The jury was nonetheless entitled to credit the substantial body of evidence documenting Appellant's numerous communications to the victim, and to discredit the victim's testimony.

In addition to the foregoing, we note two additional points. First, Appellant's argument ignores the statute, which requires only an attempt to intimidate, of which there is ample evidence. Second, the record supports a finding of actual intimidation. Because the victim's trial testimony regarding Appellant's assault of her was in stark contrast to the recorded 911 call and her contemporaneous written statement to the police, there was ample evidence that Appellant's campaign of intimidation was successful. Appellant's argument fails.

Because we have found no merit to any of Appellant's arguments, we affirm the judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 12/1/2022*